PERRY J. SLOANE ET AL. *v.* CITY OF WATERBURY ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued June 13—decided July 27, 1962

*William J. Secor, Jr.,* with whom was *Kenyon W. Greene,* for the plaintiffs.

*John D. Mahaney,* assistant corporation counsel, with whom were *Harry F. Spellman,* corporation counsel, and, on the brief, *Francis J. Butler,* for the defendants.

BALDWIN, C. J.  This action for a declaratory judgment was brought by Perry J. Sloane, chairman of the charter revision commission of Waterbury, and John J. O'Donnell, an employee of the city and president of the Waterbury Firefighters Association, against the city of Waterbury, Edward D. Bergin, mayor, and Chester A. Langlais, city clerk.  The plaintiffs seek a decision as to whether a vote of the board of aldermen to approve a proposed charter amendment is subject to the mayor's veto, and whether the city clerk is obligated to file in the office of the secretary of the state a statement of the question for approval by the electors, so that

the question will appear on the voting machine ballot labels at the election to be held on November 6, 1962.[1] The proceedings looking to the submission of the proposed charter amendment to the electorate were taken pursuant to chapter 99 of the General Statutes, popularly known as the Home Rule Act.

The Home Rule Act gives to any city the "power to draft, adopt and amend a charter which shall be its organic law and shall supersede any existing charter . . . and all special acts inconsistent therewith." § 7-188. Such action "shall be initiated by a two-thirds vote of the entire membership of the appointing authority of such . . . city . . . or by petition filed with the clerk of such municipality for submission to the appointing authority and signed by not less than ten per cent of the electors of such . . . city." Ibid. The "appointing authority," as that term is used in the act, "means . . . the common council or other body empowered to make ordinances of a city." § 7-187. After action looking to the drafting of, or amendment to, a charter has been thus initiated, the appointing authority is to provide for the appointment of a commission to prepare a draft of the proposed charter or amendment for a

---

[1] The questions reserved are as follows: "(a) Did the defendant Edward D. Bergin, Mayor of the defendant City of Waterbury, have the right and power under the charter of the City of Waterbury to veto and was his action effective to override the action taken by the Board of Aldermen of said City on December 18, 1961, approving the proposed charter amendment . . . submitted to it by the Charter Revision Committee of said City?   (b) Is the defendant, Chester A. Langlais, City Clerk, of the City of Waterbury, obligated to file in the office of the Secretary of State a statement setting forth the designation of the question of approval of said proposed charter amendment as it is to appear on the voting machine ballot labels at the election to be held on November 6, 1962, in accordance with the provisions of Section 9-369 of the General Statutes of the State of Connecticut, 1961 Supplement?"

public hearing before the commission and for a report to the appointing authority. §§ 7-190, 7-191. The appointing authority is then required to hold at least one public hearing and to act on the draft. § 7-191. If the appointing authority approves, the approval must be "by a majority vote of its entire membership." Ibid. Within thirty days after approval, the draft must be published in full at least once in a newspaper having a circulation in the city. Ibid. The appointing authority is to determine, "by a majority vote of its entire membership," whether to submit the draft to the electors at a regular election or at a special election, but in either case the submission must be within one year from the date of the approval by the appointing authority. Ibid.

On September 6, 1961, the Waterbury board of aldermen voted to initiate action to amend the charter and to appoint nine electors to a charter revision commission. It instructed the commission to consider an amendment to the charter to establish a civil service system for city employees. On September 18, 1961, the aldermen appointed the plaintiff Perry J. Sloane and eight other electors of the city to the commission. Following a public hearing on November 8, the commission submitted a draft of the proposed amendment to the aldermen, all according to the statutes. The aldermen held a public hearing on the proposed amendment on December 11, 1961, approved it on December 18 by a majority vote of the entire membership, and voted to submit it to the electorate at the regular election on November 6, 1962. On December 28, 1961, the mayor purported to veto the action of the board of aldermen. On December 29, a resolution to overrule the mayor's veto was presented to the aldermen and was defeated by a vote of six to six. Pursuant to

an order of the Court of Common Pleas entered on January 16, 1962, the proposed amendment was published on January 17, that is, within the time required by General Statutes § 7-191.

The charter of the defendant city places the legislative power in a board of aldermen. Waterbury Charter § 301 (1957); 21 Spec. Laws 569, § 32. That board is, within the meaning of General Statutes § 7-187, the "body empowered to make ordinances" and is, therefore, the "appointing authority" as that term is used in the Home Rule Act. The charter makes the mayor the chief executive officer of the city. Waterbury Charter § 2101 (1957); 21 Spec. Laws 583, § 58. It gives him the power to veto "each vote, resolution, order, by-law or ordinance" taken or enacted by the board of aldermen. Waterbury Charter §§ 339, 2101 (f) (1957); 23 Spec. Laws 648, § 10; 21 id. 584, § 58 (f). The defendants argue that the provisions of the Home Rule Act must be read in the light of the charter and reconciled with it. They contend, therefore, that any action of the board of aldermen, including its action as the "appointing authority" under the Home Rule Act, is subject to the veto power conferred upon the mayor by the charter.

The Home Rule Act, in § 7-192, provides, inter alia: "All charters and special acts in effect on May 29, 1957, shall continue in effect until repealed, superseded or amended by the adoption of a charter, charter revision or amendment in accordance with . . . [the act], provided any revision or amendment of any such charter or special act or any charter adopted subsequent to said date shall be accomplished as provided in § 7-191, the provisions in any charter in existence on said date governing revision or amendment to the contrary not-

withstanding." This provision makes it abundantly clear that the legislature intended the procedure outlined in the Home Rule Act to be a complete, self-contained method—not involving action by the General Assembly—of amending the charter of a city, irrespective of any existing charter provision.[2] When the board of aldermen initiated the present amendatory proceedings by a two-thirds vote, it was acting exclusively under the powers conferred on it by the Home Rule Act and not by virtue of any charter provision. The act confers no power whatsoever on the mayor to exercise a veto. A construction which would import into these amendatory proceedings the power of veto conferred on the mayor by the city charter would be, therefore, inconsistent with the procedure provided for in § 7-191.

It is a rule of statutory construction that where two statutes appear to be repugnant they are to be construed, if that is reasonably possible, so that both are operative. *Danbury Rubber Co.* v. *Local 402,* 145 Conn. 53, 57, 138 A.2d 783, and cases cited. However, the cardinal rule is that statutes are to be construed so as to carry out the expressed intent of the legislature. *Bridgeport* v. *Stratford,* 142 Conn. 634, 641, 116 A.2d 508; *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 447, 86 A.2d 70; *Stamford* v. *Stamford,* 107 Conn. 596, 605, 141 A. 891. Courts cannot defeat an expressed legislative intent in an effort to accomplish a reconciliation between repugnancies. The expressed intent of the legislature always governs. *State ex rel. Rourke*

---

[2] The charter of Waterbury at the time of the passage of the Home Rule Act in 1957 contained provisions for amendment by action of the board of aldermen, to be followed by approval by the mayor or passage over his veto, and by a referendum. 21 Spec. Laws 582, § 56; see Waterbury Charter § 141 & n. (1957); 21 Spec. Laws 583, § 57.

v. *Barbieri*, 139 Conn. 203, 207, 91 A.2d 773, and cases cited. If the mayor could exercise a veto on charter revision action initiated by the board of aldermen, he could likewise exercise a veto on a vote of the board to put into operation amendatory proceedings initiated by a petition signed by 10 percent of the electors of the city, a method also provided for in § 7-188. The legislature could not have intended that a veto could defeat a petition of the electors. See *State ex rel. Rourke* v. *Barbieri*, supra, 210. Home rule, so far as it relates to charter changes, may be exercised only in accordance with the provisions of the General Statutes. *Lacava* v. *Carfi*, 140 Conn. 517, 520, 101 A.2d 795; *State ex rel. Rourke* v. *Barbieri*, supra, 208.

When the act which is the source of the home rule provisions we have been discussing was enacted, as Public Acts 1957, No. 465, it contained, in its § 19, what is presently § 2-14 in chapter 16 of the General Statutes. This section provides alternative methods of charter adoption or amendment which involve—by means of a two-thirds vote of the legislative body of the municipality, or a majority vote of a town meeting, or a petition signed by 10 percent of the electors—a request to the General Assembly for the enactment of special legislation. Section 2-14 specifically provides that a town, city or borough cannot secure the enactment by the General Assembly of special legislation affecting the local government otherwise than by following the procedures specified in the section. When § 2-14 is read in connection with the sections of the Home Rule Act contained in chapter 99 of the General Statutes and hereinbefore discussed, it becomes clear that the legislature intended to provide, for uniform application throughout the state, two com-

pletely separate methods—one with, and one without, action by the General Assembly—for inaugurating and securing the adoption or the amendment of a municipal charter. The Home Rule Act covers the entire field of charter drafting or amendment allowed to municipalities without action of the General Assembly. Enacted subsequently to the special act of 1931 revising the charter of the city of Waterbury (21 Spec. Laws 563, No. 499), and the amendments to it pertinent here, the Home Rule Act takes precedence over any inconsistent provision in that prior special act. *Willard* v. *West Hartford,* 135 Conn. 303, 306, 63 A.2d 847; *Hutchison* v. *Hartford,* 129 Conn. 329, 332, 27 A.2d 803.

In summation, in these charter amendment proceedings under the Home Rule Act, the board of aldermen was acting, in effect, as an agent of the legislature to exercise a particular power in a particular way. It was not "legislating" under the charter. It was acting independently of the charter and using a power conferred by the General Statutes. See *Wilson Point Property Owners Assn.* v. *Connecticut Light & Power Co.,* 145 Conn. 243, 249, 140 A.2d 874; *Olson* v. *Avon,* 143 Conn. 448, 454, 123 A.2d 279; *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 669, 103 A.2d 535; *Dadukian* v. *Zoning Board of Appeals,* 135 Conn. 706, 712, 68 A.2d 123. The power of veto conferred on the mayor by the charter could affect only action taken by the board of aldermen pursuant to the charter. It could not defeat the clear intent of a higher authority expressed in the Home Rule Act. See *Payne* v. *State ex rel. Guitteau,* 32 Ohio App. 189, 191, 166 N.E. 907.

We answer the questions propounded as follows: (a) "No"; (b) "Yes."

32

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.