**FRATERNAL ORDER OF POLICE, DELAWARE–WILMINGTON LODGE NO. 1 and International Association of Firefighters, Local 1590, Petitioners, Appellants,**

v.

**William T. McLAUGHLIN, Mayor, City of Wilmington, Respondent, Appellee.**

Supreme Court of Delaware.

Submitted March 12, 1981.

Decided April 10, 1981.

Jeffrey M. Weiner (argued), of Bayard, Brill & Handelman, P.A., Wilmington, for petitioner, appellant Fraternal Order of Police, Delaware—Wilmington Lodge No. 1.

Charles P. Brandt, of Brandt & Benson, Wilmington, for petitioner, appellant Intern. Ass'n of Firefighters, Local 1590.

Jeffrey S. Goddess (argued), City Sol., and John R. Sheridan, Asst. City Sol., Wilmington, for respondent, appellee.

Before DUFFY, McNEILLY and HORSEY, JJ.

DUFFY, Justice:

This is an appeal by two public employee unions from an order of the Superior Court denying a petition for a writ of mandamus directed to the Mayor of the City of Wilmington. We are asked to review the methods by which an amendment to the Home Rule Charter of the City of Wilmington may be initiated.

### I

The undisputed facts are these:

The Fraternal Order of Police, Delaware—Wilmington Lodge No. 1 (FOP) and the International Association of Firefighters, Local 1590 (Firefighters) seek an amendment to the Wilmington City Charter to provide binding arbitration for the settlement of disputes which are not resolved by collective bargaining with their employer, the City of Wilmington. Following a procedure for initiating a Charter amendment, stated in Chapter 6 of the City Code,[1] the FOP and the Firefighters circulated an application among Wilmington citizens and secured signatures in number greater than ten percent of the total number of votes cast in the immediately preceding mayoral election. In September 1980, the unions submitted the application to the Mayor. It asked that a question regarding the establishment of binding arbitration be submitted to the people of Wilmington at the mayoral election to be held on November 4, 1980. The Mayor refused to accept the unions' application and returned it on September 4, indicating that the procedure under Chapter 6 was no longer a valid means of initiating a Charter amendment.

The FOP and the Firefighters immediately filed a petition in Superior Court for a writ of mandamus to be issued to the Mayor, compelling him to accept the application. Following an expedited briefing and argument schedule, on October 14 the Superior Court denied the petition holding that the procedure for initiating a Charter amendment stated in Chapter 6 had been repealed by implication through enactment of Wilmington's Home Rule Charter, which had become effective July 1, 1965. The FOP and the Firefighters then docketed this appeal. We affirm.

### II

■ Although the election has been held, all parties join in asking the Court to decide the appeal. Since the issue concerns the validity of a procedure for amending the Wilmington Charter, and thus is of continu-

---

1. Chapter 6 is titled, "Initiative and Referendum." Section 6-1 provides, in part:

    "On application addressed to the council, signed by citizens of the city, qualified to vote at the last preceding election for the mayor of the said city, aggregating in number not less than ten per centum of the whole number of votes cast at such election for such mayor, asking for the submission to the people of the said city of any question relating to the affairs of the said city, for an expression of opinion thereon, such question shall be placed before the people at the next city election."

ing significance to the City and its citizens, we conclude that the issues are not moot and that this Court should decide them. *Traub v. Brown*, Del.Supr., 9 W.W.Har. 187, 197 A. 478, 479 (1938); compare *Moore v. Ogilvie*, 394 U.S. 814, 815, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969).

## III

The initiative and referendum provisions of Chapter 6 were enacted in 1907, 24 *Del. Laws* c. 75, § 1, and currently appear in the "Related Laws" section of the Wilmington Code. In 1961, the General Assembly passed the Home Rule Enabling Act, 53 *Del.Laws* c. 260, codified in Chapter 8 of Title 22 of the Delaware Code, granting to every municipal corporation in the State with a population of 1,000 persons or more the power to "proceed as set forth in this chapter to amend its municipal charter and . . . subject to the conditions and limitations imposed by this chapter, amend its charter so as to have and assume all powers which, under the Constitution of this State, it would be competent for the General Assembly to grant by specific enumeration and which are not denied by statute." 22 *Del.C.* § 802. Section 811 of the Enabling Act states two methods of initiating an amendment to a charter enacted thereunder.[2] 22 *Del.C.* § 811.

. . . . .

In the general election of 1964, and pursuant to the Home Rule Enabling Act, the City adopted Wilmington's Home Rule Charter. Consequently, Wilmington's Charter is comprised of the 1965 Home Rule Charter provisions and all unrepealed "Related Laws" theretofore enacted. The sole issue presented, then, is whether the initiative and referendum procedure of Chapter 6 continues as a viable means of initiating a Charter amendment, or, whether it was implicitly repealed by enactment of the Home Rule Charter in 1965 and replaced by the methods provided in the Enabling Act.

■ It is conceded that because Chapter 6 is included in the "Related Laws" of the City of Wilmington, it is to be considered part of the City's Charter. *In Re Opinion of the Justices*, 276 A.2d 736 (1971). And both sides accept the Superior Court's view that if enactment of the Home Rule Charter in 1965 effectively repealed Chapter 6, it did so by implication, because there is not an express reference to the initiative and referendum procedure. Thus our determination of Legislative intent, like the analysis of the Superior Court, must start with the general rule that repeal by implication is not favored in law, *DuPont v. DuPont*, 32 Del.Ch. 156, 87 A.2d 394 (1952), except when two provisions are irreconcilably inconsistent, *Hodson v. Hodson Corp.*, 32 Del.Ch. 76, 80 A.2d 180 (1951), repugnant to each other, *Philadelphia, B. & W. R. Co. v. Mayor and Council of Wilmington*, 30 Del.Ch. 213, 57 A.2d 759 (1958), or when they lead to absurd, unjust or mischievous results, *C. v. C.*, Del.Supr., 320 A.2d 717 (1974). Given that rule, the unions attack the Superior Court's determination that initiative and referendum is "repugnant to the orderly scheme" of charter amendments provided by § 811 and would "encourage

**2.** 22 *Del.C.* § 811 provides, in pertinent part:
"The amendment of a charter shall be proposed either by a resolution of the legislative body of a municipal corporation, three quarters of all members elected thereto concurring or by a charter commission of 7 members elected by the qualified voters of the municipal corporation from their membership at large pursuant to petition for such an election bearing the signatures of at least 10% of the qualified voters of the municipal corporation and filed with the clerk or other chief recording officer of the legislative body of the municipal corporation. The charter commission candidates who receive the most votes shall constitute the commission. On

the death, resignation or inability of any member of a charter commission to serve, the remaining members shall elect a successor. The commission shall have authority to propose the amendment of the charter as specified in the petition, to hold public hearings thereon and to arrange for putting the proposed amendment on the ballot or voting machine to be used at the next referendum election.

In addition to the procedure hereinbefore set forth, a charter may be amended by act of the General Assembly, passed with the concurrence of two thirds of all the members elected to each House thereof."

absurd or mischievous consequences"; they argue that initiative and referendum is merely an additional, complimentary method of initiating a Charter amendment.

■ We reject this contention and adopt the rationale of the Trial Court to buttress, in part, our view that the initiative and referendum procedure of Chapter 6 has been repealed. As we read the Enabling Act, such was the intent of the General Assembly. The Act grants certain municipalities the power to adopt Home Rule, but "subject to the conditions and limitations" imposed by the Act. 22 *Del.C.* § 802. In our view, § 811, which appears in Subchapter II of Chapter 8, titled "Method of Exercising Power," and which states two distinct and precise methods [3] of amending a Charter adopted under the Enabling Act, clearly constitutes one such condition or limitation. Moreover, § 811 makes no mention of initiative and referendum; indeed, unlike that procedure, both methods of initiating a charter amendment delineated by that section include a "pre-screening" mechanism conducted by the "legislative body" of the municipality or by a charter commission created as provided in § 81. Without such pre-screening the proposal cannot be submitted to the electorate. See § 813. Given that two-step procedure for amendment required by § 811, there is an irreconcilable inconsistency between the general law stated therein and the special law embodied in Chapter 6; accordingly, the latter was repealed by implication, *In the Matter of Application of Slaughter Beach Water Company*, Del.Supr., 427 A.2d 893 (1981).

Accordingly, we hold that the orderly scheme of initiating a municipal charter amendment envisioned by § 811 evidences a Legislative intent that § 811 encompass the entire field; in other words, that an amendment to a charter adopted under § 802 of the Enabling Act may be initiated only pursuant to one of the methods provided by § 811. It follows that the judgment of the Superior Court that adoption of the Home Rule Charter in 1965 repealed, by implication, the initiative and referendum procedure of Chapter 6 is correct. See *Sloane v. City of Waterbury*, 150 Conn. 24, 183 A.2d 839 (1962); *Hitchins v. Mayor and City Council of Cumberland*, 208 Md. 134, 117 A.2d 854 (1955).

\*    \*    \*    \*    \*    \*

Affirmed.

---

**3.** To be entirely accurate, § 811 provides a third manner in which a municipal charter may be amended, but because that requires action by the General Assembly, it is not important to the case before us. See 22 *Del.C.* § 811.