[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Marguerite Sparacino is the record owner of property located in a B Residence Zone at 24 Thomes Street, in the Rowayton district of Norwalk, Connecticut. The lot is approximately 150 feet by 50 feet in dimension and contains a single family home presently occupied by the owner's son, Jack Sparacino, his wife Jane, and four year old son, Jack Walter. They also are plaintiffs in this action.
The front of the lot inclines sharply up from the street level for approximately 30 feet to where the house is situated. The rear topography of the lot is uneven with rock outcrop.
In the Summer of 1989, the plaintiffs erected a play unit for the child in the rear of the lot. The play unit consists of an eight foot by eight foot platform mounted on four posts which were are imbedded in cement footings. The height of the platform from the ground is six and one-half feet. A three and one-half foot high railing surrounds the platform. A four by five by five foot prefabricated child's cabin is placed on top of the platform. A ladder, climbing rope, and several tubeless tires for swinging and climbing serve as accoutrement. The height of the unit from the ground to the top of the cabin is eleven and one-half feet. The site on which the unit is located is approximately eighteen feet above street level.
The unit, by choice or necessity, is located to the extreme rear of the property, as far as possible away from the house and its exterior adult uses and within four and one-half feet of the rear lot line. That lot line is shared with the property of Mr. and Mrs. George Eagan of 25 Woodbine Road. The Eagans complain that the deck and cabin is on a level and looks in on their master bedroom and overlooks the lower living room window.
On July 5, 1989, Martin Maier, the zoning inspector for the City of Norwalk, acting after a complaint, issued a "notice of violation and order to comply" indicating that the plaintiffs had violated various sections of the zoning ordinance and state building code because: CT Page 2578
(1) they had not filed the necessary plans, obtained the required approval and building permit for the erection of the structure as required by regulations 118-1420 D, E, and F;
(2) they had erected the accessory building within 10 feet of the rear lot line in violation of regulation 118-910 E; and,
(3) the structure exceeded the height of 15 feet when measured from the centerline of the street as limited by regulations 118-810 H.
The notice directed the plaintiffs to apply for a variance or necessary permits within days or be subject to penalty.
The plaintiffs appealed to the defendant Zoning Board of Appeals from the orders and decisions of the zoning inspector and alternatively sought a variance from the regulations. The bases of the plaintiffs' appeal were:
(1) The play unit was not an accessory structure under the Norwalk zoning regulations and was not, therefore, subject to the regulations;
(2) Even if an accessory structure, there was no violation of the rear yard setback requirement because the plaintiffs' rear lot line abuts the rear lot line of the adjacent property and, in any event, is more than 70 feet from the street, complying with Regulations 118-910 E and F;
(3) In addition, even if an accessory structure, the unit is not in violation of the zoning height requirements when properly measured from the surrounding area, as permitted by Regulation 118-100 "height" definition, rather than the centerline of the street.
As alternative relief, the plaintiffs requested a variance so as to reduce the rear yard setback requirement from ten feet to four and one-half feet and to measure the height from the base of the unit rather than the centerline of the street. The hardship was the extremely steep and uneven grade of the land containing ledge and many large rocks and trees, limiting where such a play unit could be situated.
After a public hearing, the board sustained the plaintiffs' appeal from the zoning inspector's decision that the structure violated a rear yard setback requirement of 10 feet, but denied the appeal from his determination that the unit as an accessory structure required a building permit and other zoning approvals and denied the appeal from his decision that the structure violated the maximum height requirements for accessory buildings CT Page 2579 of 15 feet as measured from the street centerline.
The board then granted the request for a variance but with the following conditions:
"1) Playhouse structure be placed on the ground at a location which is between the deck structure and the applicant's own residence; 2) That the deck structure be lowered two feet; 3) Screening, determined by Mr. Maier to be reasonably adequate between the structure and the adjacent residence, be installed. This is without prejudice to the applicant's right to return to this Board to propose other modifications which will meet with this Board's approval as to the conditions under which the variance is granted so that the result is to lessen the impact of sight and noise to the adjacent property to the satisfaction of this Board."
The plaintiffs filed a timely appeal from the decision of the board. At the court hearing, they established they are respectively the owners and occupants of the subject property. As such, they have standing as being statutorily and specifically aggrieved by the board's decision.
Their claim is that the board acted illegally, arbitrarily and in abuse of its discretion by denying their appeals, in part, from the orders and decisions of the zoning inspector because:
a. The play unit at issue is not and should not be considered an accessory structure under the Building Zone Regulations of the City of Norwalk and therefore is not and should not be subject to zoning regulations;
b. Alternatively, the play unit is not in violation of the Norwalk zoning height regulations when properly measured from the surrounding area as opposed to the centerline of the street.
The plaintiffs claim the board acted illegally, arbitrarily and in abuse of its discretion when it imposed the conditions on the variance it did grant, because an adequate showing of hardship was established to warrant the variance as requested without conditions and because the conditions imposed are unreasonable, impractical and unduly burdensome.
 I.
Under the Norwalk regulations (Sec. 118-14201420 A and C) as well as under General Statutes 8-12, the zoning enforcement officer is in the first instance the person authorized to interpret and enforce zoning regulations. The Norwalk CT Page 2580 regulations require that, before the construction of any building or structure, an application for zoning approval or zoning compliance be submitted to the inspector with adequate specifications (Sec. 118-1420 D). Written approval from the inspector is required before any construction may take place (Sec. 118-1420 E). If there is a failure to comply, the inspector may issue an order such as the one issued by him in this case. Sec. 18-1420 A (1); General Statutes 8-12).
Sec. 118-100 Definitions provides that:
"Certain words in this ordinance are defined for the purposes thereof as follows: . . . the word `building' includes the word `structure'; . . ."
The plaintiffs claim the Norwalk regulations are silent as to what is a "structure," since nowhere is the word "structure" defined. Thus, one using his property would have to guess at the meaning of "structure" to ascertain if a zoning approval for construction of something other than a building were required. Because the regulations are in derogation of the common law, they must be reasonably certain, clear and void of vagueness under the teaching of such cases Lebanon v. Wood, 153 Conn. 182,191, 215 A.2d 112 (1965).
The plaintiffs cite Sonn v. Planning Commission of the City of Bristol, 172 Conn. 156, 162, 374 A.2d 159 (1976):
"Vague regulations which contain meaningless standards lead to ambiguous interpretations . . . Adequate, fixed and sufficient standards of guidance for the commission must be delineated in its regulations so as to avoid decisions affecting the rights of property owners, which would otherwise be a purely arbitrary choice of the commission; such a delegation of arbitrary power is invalid. Rollingwood Property Owners Assn. v. City Plan Commission, 152 Conn. 518, 522, 209 A.2d 7; 82 Am. Jur.2d, Zoning and Planning, Secs. 63, 64; annot., 58 A.L.R.2d 1083, 1097, Sec. 4."
Therefore, the plaintiffs claim the application of the zoning regulations to the play unit is invalid because they do not meet the required standards against vagueness.
The defendant asserts that the state building code, which determines the requirements for the issuance of building permits, defines a "structure" as "that which is built or constructed."
It is clear that in determining what is an accessory building for purposes of zoning, the regulations include, within the word building, a "structure," and therefore do not limit to CT Page 2581 what is ordinarily considered a building.
Thus, those cases which exclude a "structure" from being considered a "building", because neither the context nor explicit definition allow it, are inapplicable. (See, for example, Katsoff v. Lucertini, 141 Conn. 74, 78, 103 A.2d 812 (1954): "Billboard have been held to be included within the meaning of the word `structure.' However, while a building is always a structure, all structures are not buildings.")
Since a building is always a structure, it would not be necessary for the regulations to have defined building as including structure unless the term "building" in the regulations were intended to incorporate more than what is ordinarily defined as a building. In that context, building codes have been held to apply to "structures" which are not buildings. Hendryx Co. v. New Haven, 104 Conn. 640, 134 A. 77
(1926).
The unit in question is certainly substantial and constructed. Moreover, it is intended to be permanently located at its site since the posts are imbedded in concrete footings. It meets any definition of "structure." Whether this structure was an accessory use or building under the definition of "building" in the regulations is within the scope of the board to determine. Lawrence v. Zoning Board of Appeals, 158 Conn. 509,513-15, 264 A.2d 552 (1969).
The plaintiffs claim that there are many similar structures in Norwalk which were erected without any apparent requirement for zoning approval or permit. Thus, selecting this unit now for enforcement was arbitrary, capricious and an abuse of discretion. Moreover, the plaintiffs appear to claim that the defendant is estopped from asserting the unit was subject to zoning regulations because one or more officials said that a permit was not necessary for the unit.
What little evidence there was of a claim that a zoning official indicated that the regulations were not applicable was not accepted by the board. There was no additional evidence presented to this court which would warrant a finding that any Norwalk town official, who was authorized to do so, expressly approved the construction of this unit without a permit so as to in fact induce the plaintiffs to construct where and in the manner they did. Moreover, the plaintiffs have not briefed a claim of estoppel. West Hartford v. Gelinas, 18 Conn. App. 688,691, 559 A.2d 1176 (1989).
When, either because there was no previous complaint or because of laxness, the zoning authority has failed to enforce CT Page 2582 against a violation by similar constructions, unless a pattern of discrimination can be established, a plaintiff cannot prevail against the municipal zoning authority on the grounds of laches or denial of equal protection. Bianco v. Darien, 157 Conn. 548,254 A.2d 898 (1969).
The plaintiffs have not established that the board acted illegally, arbitrarily or in abuse of its discretion in sustaining the zoning inspector's conclusion that this structure required zoning approval under Section 118-1420.
 II.
The board sustained the plaintiffs' appeal from the ruling of the zoning inspector that there was a violation of the required set back from the rear lot line. The pertinent setback regulations read, at the time of the hearing, as follows:
 Sec. 118-910. Location of accessory buildings in residence zones.
 Accessory buildings in residence zones shall conform to the following regulations as to their location upon the lot: . . .
 E. No accessory building shall be located within five (5) feet of its rear lot line when such line forms part of the front half of the lot line of an adjacent interior lot, or the front quarter of an adjacent through lot. In the case of lots more than one hundred (100) feet deep, the aforesaid distance required between the rear lot line and the accessory building shall be increased to ten (10) feet.
 F. Notwithstanding any requirement in this section, the foregoing rules shall not prohibit any accessory building seventy (70) feet or more from street bounding the block.
Since the plaintiffs rear lot line abutted the rear lot line of the Egan property, the board accepted the literal reading of these sections as exempting the unit from any setback requirement, despite the zoning inspector's assertion that the regulations had been customarily interpreted as requiring a setback of ten feet even when the line abutted the rear of the adjacent property. III.
The plaintiffs have appealed from the ruling of the board sustaining the zoning inspector's ruling that the structure violated the height requirements for accessory buildings of no CT Page 2583 higher than 15 feet above the center-line of the street. This ruling was based on a literal reading of the pertinent regulation.
 Sec. 118-810 General provisions relative to area and height regulations. . . .
 H. Accessory buildings may occupy the required rear yard area up to an average height of fifteen (15) feet above the center-line elevation of the street in a residence zone. The yard area occupied by such accessory building shall, however, be included in computing the maximum percentage of the lot which may be built up in any given zone.
Because the ground area where the unit was constructed was already eighteen feet above street level, no accessory structure of any sort could be erected there without a variance.
The board ignored the claim that such a reading would militate against construction of accessory units by property owners whose lots inclined up from the street level, while allowing property owners whose lots inclined down from the street level to construct units in excess of fifteen feet in height.
The plaintiffs urged the board to read Sec. 118-810 H, supra, in conjunction with section 118-100, which provides:
 HEIGHT OF BUILDING — The vertical distance measured from the center-line elevation of the street to the level of the highest point of the roof's surface, if the roof is flat, or to the mean level between the eaves and the highest point of the roof if any other type. When the lot level is higher than the center-line elevation of the street, the average elevation of the finished grade adjacent to the exterior walls of the building shall be taken as the base for measuring building height, except that, where the finished grade is established by filling, average elevation shall be measured from not more than three feet above the center line elevation of the street. . . . .
Such a reading would reconcile the provisions and limitations on buildings in general and accessory uses in particular, especially when there appears no valid reason to do otherwise. "Where separate parts of an act appear to be repugnant, the act should be viewed in its entirety and its parts should, if possible, be construed so that each will be operative. Donahue v. Zoning Board of Appeals, 155 Conn. 550,557, 235 A.2d 643; Sloane v. Waterbury, 150 Conn. 24, 29, 557, CT Page 2584183 A.2d 839." Danseyar v. Zoning Board of Appeals, 164 Conn. 325,328, 195 A.2d 282 (1973).
"It is a standard rule of construction that, `whenever feasible, the language of an ordinance will be construed so that no clause is held superfluous, void or insignificant.' Planning Zoning Commission v. Synanon Foundations, Inc., 153 Conn. 5,309, 216 A.2d 442." Melody v. Zoning Board of Appeals,158 Conn. 516, 521, 264 A.2d 572 (1969).
The board erred in sustaining the zoning inspector's ruling that the unit was in violation of the height limitation requirement for accessory buildings.
In any event, the issue is moot because the regulation was amended effective February 2, 1990, before the hearing in this court to read as follows:
 Sec. 118-810 General provisions relative to area and height regulations.
. . .
 H. Accessory buildings may occupy the required rear yard area up to an average height of fifteen (15) feet in a residence zone. The yard area occupied by such accessory building shall, however, be included in computing the maximum percentage of the lot which may be built up in any given zone.
The requirement that the height be measured from the center-line elevation of the street has been removed.
"The majority rule, and the rule followed in Connecticut, is that the zoning law or regulation in effect at the time of the decision of a court is controlling as opposed to that in effect when the proceedings were instituted or when the administrative agency erred its decision upon the application. [Citations omitted]." McCallum v. Inland Wetlands Commission, 196 Conn. 218,223, 492 A.2d 508 (1985).
The structure is in compliance with the present regulations, so as to this portion, the appeal is sustained.
 IV.
The board granted a variance from the regulations. The plaintiffs have appealed from the conditions set by the board. The plaintiffs have not briefed this claim nor presented any information that the conditions are unreasonable, impractical and CT Page 2585 unduly burdensome. It is assumed this portion of the appeal has been abandoned. Parenthetically, the conditions seem well-suited to the circumstances, allowing the play unit to remain where the plaintiffs believe it should be while protecting the privacy and property rights of the abutting residents.
The reason for the variance was the hardship created by an enforcement of the height requirement as the board determined the application of that requirement to the play unit. Because the ordinance has since been amended, that reason for the variance no longer exists.
However, the rear yard setback requirement was also amended in February, 1990. The pertinent section now reads:
 Sec. 118-910. Location of accessory buildings in residence zones. Accessory buildings in residence zones shall conform to the following regulations as to their location upon the lot:
. . . . .
 E. No accessory building shall be located within five (5) feet of its rear lot line. In the case of lots more than one hundred (100) feet deep, the aforesaid distance required between the rear lot line and the accessory building shall be increased to ten (10) feet.
The limitation on setback to those circumstances, "when such line forms part of the front half of the lot line of an adjacent interior lot, or the front quarter of an adjacent through lot", has been removed.
It is not clear whether the plaintiffs have filed for a building permit under the granted variance. If not, the plaintiffs may be faced with the problem that the structure now violates the setback requirements. It would appear to this court that the variance would be equally applicable for the same hardship which forced the plaintiffs to select the site initially and the conditions would as well serve to the problem of the proximity to the lot line and the privacy needs of the adjoining neighbors.
 V.
Under these circumstances, it would appear appropriate under the provisions of General Statutes 8-8 (1) to grant the following relief: CT Page 2586
1. The appeal is dismissed as to the board's action sustaining the decision of the zoning inspector that the structure is subject to the zoning regulations and requires a zoning permit for its erection;
2. The appeal is sustained as to the requirement that the height of the accessory structure is limited to fifteen feet as measured from the center-line of the street both because of the reasons set forth above and because the issue has been rendered moot by the amendment of the relevant regulation;
3. The appeal from the conditions imposed by the board on the variance granted is dismissed because there is no evidence that the conditions imposed are unreasonable, impractical and unduly burdensome and because the issue was abandoned by failure to brief; and,
4. The matter is remanded to the Board of Zoning Appeals of the city of Norwalk to determine if, in light of the amended regulation concerning rear yard setback, the variance should be modified or remain as granted.
NIGRO, J. CT Page 2587
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 2588