STATE EX REL. FREDERICK M. FEIGL
*v.* WILLIAM H. RAACKE ET AL.

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 155485
AT BRIDGEPORT

Memorandum filed January 24, 1975

*Voog, Simmons & Voog,* for the plaintiff.

*Pullman, Comley, Bradley & Reeves,* for the defendants.

SADEN, J. In this action, raising an issue not heretofore determined by Connecticut courts, the plaintiff, Frederick M. Feigl, an elector and resident of the town of New Fairfield, seeks a writ of mandamus to compel (1) the board of selectmen to warn a special town meeting pursuant to a petition presented to it on September 17, 1974, under General Statutes § 7-1, which would direct the selectmen, board of finance, and town treasurer to rebate $342,460 to all taxpayers of the town, which sum was allegedly levied in excess of the fiscal year budget approved by the town meeting; (2) the board of finance to hold a meeting for the purpose of (a) fixing a lower mill rate for the fiscal year starting July 1, 1974, and ending June 30, 1975, and (b) ordering a rebate to the taxpayers of the town of New Fairfield; and (3) the tax collector to (a) "collect no taxes . . . until a proper (lower)

mill rate has been set by the board of finance," and (b) "rebate to the taxpayers all funds collected from them in excess of the proper and legal mill rate."

The defendants have filed a return or answer pursuant to § 466 of the Practice Book, and the parties have agreed that that answer is in effect a demurrer and may be treated as such. The court will act accordingly.

The facts which have given rise to the request for relief are not in dispute. A school budget prepared and submitted by the board of finance for approval at the annual town meeting on May 11, 1974,[1] was rejected at that meeting and was again subsequently rejected at special town meetings on June 8, 1974, and June 29, 1974.[2] Acting pursuant to section 12-123 of the General Statutes, the selectmen of the town then immediately met on July 3, 1974, to make a rate bill, based upon the grand list last completed, in order to secure sufficient funds to meet current school expenses for the fiscal year. The selectmen based their mill rate on the operating school budget earlier requested and recommended by the board of finance but not approved by the annual town meeting. On August 10, 1974, a fourth town meeting by referendum was held, and the educational budget in question was approved by an amount approximately $343,000 less than the

[1] Neither side to this controversy has indicated whether § 7-388 of the General Statutes dealing with annual budget meetings as distinguished from annual town meetings is applicable. The court, therefore, assumes it is not applicable.

[2] It has been the custom of New Fairfield's annual town meeting to approve the budget in two parts, one related to all general operations of the town excluding the education budget and the other dealing with education. The statutes do not contemplate such a division of budgets. General Statutes § 7-344. There is in fact only one budget for a town encompassing all expenses including educational costs. In the present case the court is not informed whether the first part of the budget covering all but educational costs was adopted.

amount previously recommended by the board of finance. As a result, the plaintiff now claims that the proper mill rate which should and must be set by the board of finance is approximately 3.8 mills lower than the present rate. As noted above, he seeks that recalculation in addition to a rebate of the claimed surplusage of approximately $343,000 in collected taxes. The defendants argue that even assuming the plaintiff's allegations of fact to be true, the relief requested cannot, under applicable law, be granted.

The initial question to be considered is the propriety of the refusal of the board of selectmen to warn a special town meeting. The petition requesting such action by the selectmen reads as follows: "Resolved that the Selectmen, Board of Finance and the Town Treasurer are directed and authorized to rebate to all taxpayers of the town of New Fairfield the amount of $342,460, which was levied in excess of the 1974/75 budgets as approved by the Town Meeting." While the board of selectmen is required to warn a town meeting on petition of twenty inhabitants qualified to vote; General Statutes § 7-1; there is no duty to warn a meeting pursuant to such a petition unless the board is reasonably certain that the object of the petition is lawful, proper, and not frivolous. *Lyon* v. *Rice,* 41 Conn. 245, 251; *Willis* v. *Sauer,* 19 Conn. Sup. 215, 217; *State ex rel. Weisberg* v. *Board of Selectmen,* 16 Conn. Sup. 485, 486. Hence, the central issue is whether the body politic of the town (in this case the town meeting) can order either the selectmen, the board of finance, or the town treasurer to refigure and lower the tax rate fixed under General Statutes § 12-123 and to grant the requested rebate.

"Municipalities have no powers of taxation other than those specifically given by the statutes. *New Britain* v. *Mariners Savings Bank,* 67 Conn. 528,

532 . . . ; *O'Connor* v. *Waterbury,* 69 Conn. 206, 211 . . . ." *Chamberlain* v. *Bridgeport,* 88 Conn. 480, 490. The power to prescribe or dispense with conditions, means, and methods in the assessment, levy, and collection of taxes lies clearly in the General Assembly; *Daly* v. *Fisk,* 104 Conn. 579, 584; and is subject to legislative control. *Bassett* v. *Rose,* 141 Conn. 129, 133; *Conners* v. *New Haven,* 101 Conn. 191, 196. Powers of taxation possessed by cities are not inherent but must come from express statute or charter provision. *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 198. There must be strict conformity on the part of the municipality to the terms of the legislative grant. *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 36. Most importantly, a municipality cannot by its vote decrease the amount of a tax once legally assessed. See *State ex rel. Coe* v. *Fyler,* 48 Conn. 145, 158.

Clearly, the established rule in this state is that, except for an express statutory or charter provision, neither the board of selectmen, board of finance, nor town treasurer has the authority even to consider a tax rebate. In addition, the body politic of a municipality cannot order such a rebate. Those situations in which abatement or refund is possible have been carefully circumscribed by the legislature. See General Statutes §§ 12-124 to 12-129b and Public Acts 1974, No. 74-55. Therefore, the action of the board of selectmen in refusing to warn a town meeting on the basis of the illegality of its purpose was quite correct. Furthermore, a writ of mandamus to compel either the board of finance or the tax collector to rebate taxes collected does not lie for the same reasons, i.e., lack of statutory authority.

The plaintiff's further request for a writ of mandamus to compel the board of finance to meet

and recalculate a mill rate must be viewed in light of the above discussion. The writ of mandamus is not issued as a matter of right but in the exercise of sound legal discretion. It should issue only when the duty of which enforcement is sought is the performance of a precise act requiring no discretion on the part of the defendant, the right of the plaintiff to have the duty performed is clear, and the plaintiff is without adequate remedy at law. *State ex rel. Lacerenza* v. *Osborn,* 133 Conn. 530, 534. It does not issue where the right in the plaintiff is doubtful or contested. *Carilli* v. *Pension Commission,* 154 Conn. 1, 12.

While the factors to be considered and the procedure to be followed by a board of finance in laying a tax are set forth fully in § 7-344 of the General Statutes, the actual fixing of a tax rate is subject to the sound discretion of the levying body. *Holmes* v. *Beckwith,* 11 Conn. Sup. 215, 218. "[T]he mere fact that in estimating, in advance, the amount that may be necessary for any purpose a larger amount is levied than is actually required does not invalidate the whole levy, unless the amount levied is so grossly excessive as to show a fraudulent purpose in making the levy; and whether the levy is so grossly excessive as to constitute a fraud in law on the taxpayers is to be determined not from the fact that it subsequently develops that a larger amount was levied than was actually required, but from the facts existing at the time the levy was made." 84 C.J.S. 696, Taxation, § 361. Absent a claim of gross abuse of discretion or sound business judgment, the rate properly set by the selectmen remains the legal rate of taxation.

The plaintiff refers in his writ to the "temporary" tax laid by the selectmen under General Statutes § 12-123, a designation which assumes the premise which he seeks to establish in this case. The defend-

ants deny that the tax is temporary and properly attack that designation as an erroneous conclusion of law which they refuse to, and are not required to, concede in the determination of this demurrer. Nothing in the statutory framework indicates such a rate bill as being temporary.

Section 7-344 of the General Statutes, which establishes the fundamentals for laying a tax, requires the fixing of a tax rate by the board of finance for the ensuing fiscal year ("current year") after approval of a budget at the annual town meeting or at special town meetings thereafter called "prior to the laying of the tax for the current year." See also General Statutes § 7-388. There is a reasonable urgency to lay the tax before the new fiscal year in order to begin the process of collecting taxes on an orderly and efficient basis at the inception of that year. For that reason, when any town fails to lay a tax sufficient to meet its "current expenses" as stated in § 12-123, the selectmen are empowered to act. Because of the vacuum created by the town meeting or meetings by the failure to make any educational appropriation, the selectmen must rely on the estimates of the board of finance to establish a proper mill rate for the current expenses.

It should be pointed out that the language of § 7-344 of the General Statutes does not contemplate wholly negative action by the town meeting when it considers a budget. The statute states that "such meeting shall take action upon such estimate and recommendations (of the board of finance), *and make such specific appropriations as appear advisable.*" (Italics supplied.) The town meeting may reduce a specific recommendation, but where education, which is a constitutional as well as statutory obligation of the state and the town, is concerned, a town meeting must take some action on an appro-

priation for the school system and not completely ignore it as was done on three consecutive occasions. What was ultimately attempted in the fourth referendum could and should have been voted on at the first or any referendum thereafter prior to the laying of the tax by the selectmen. The electors are themselves at fault for the manner in which they failed to meet their responsibility when they had ample time to do so prior to the invocation of § 12-123 by the selectmen.

The court is called upon to determine here whether the board of finance, the selectmen, or the treasurer has an obligation and duty to respond to the ultimate lowering of the educational appropriation by changing the mill rate, reducing the taxes, and refunding those taxes already collected.[3] Clearly, the issuance of a writ of mandamus under the facts alleged by the plaintiff is neither warranted nor proper. *Carilli* v. *Pension Commission,* 154 Conn. 1; *State ex rel. Lacerenza* v. *Osborn,* 133 Conn. 530.

The petition for the town meeting is illegal and improper for reasons indicated and therefore not the subject of mandamus; the board of finance cannot now revise the established mill rate downward for want of statutory authority to do so; and for the same reasons the tax collector cannot be subject to mandamus. The remedy for the plaintiff's dilemma lies not with the courts but with the legislature from which flows the power to tax.

The defendants' demurrer is sustained.

---

[3] The town's position is not quite as desperate as the plaintiff would have the court believe. If collected, the surplus revenue by statute will be applied to the budget for the ensuing year, thereby reducing the tax impact for that year.