[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 10614
This is an action for mandamus in which the plaintiffs seek an order of the court requiring that the Oxford Board of Selectmen call a town meeting to act upon an ordinance to "make vacant, vacate, and leave vacant position of town planner." The selectmen have refused to do so.
Because the court finds that the plaintiffs have not established a clear legal right to the extraordinary remedy of mandamus, relief is denied.
The following facts are not in dispute. The town meeting serves as the legislative branch of government in Oxford, Connecticut and a three member Board of Selectmen serves as the executive branch. Prior to November 19, 1991, the Board of Selectmen was comprised of First Selectman Raymond Drapko, and Selectmen Christopher Jaran and John Montefalco. From November 19, 1991 to the present time the Board of Selectmen has been comprised of First Selectman Edward Oczkowski, and Selectmen Robert DeBisschop and Lillian Frolisch. The Oxford town clerk received petitions requesting the call of a town meeting to take up the ordinance at issue in this case on June 17, 1991 and determined that more than 50 qualified town meeting voters had signed those petitions and that they were proper in form. The petitions calls for the selectmen to call a meeting to adopt the following ordinance: "The Board of Selectmen for the Town of Oxford shall make vacant, vacate and leave vacant the position of town planner."
On June 17, 1991, the town clerk of the Town of Oxford forwarded notice of the petition to call the town meeting to the Board of Selectmen. Upon receipt of it, the selectmen commissioned the town attorney to give an opinion whether the petition was for a lawful object. The attorney rendered his opinion to the Board of Selectmen and advised them that in his opinion the petition was not for a "lawful object". Based upon that opinion, the Board of Selectmen refused to call and warn to town meeting requested by the petition. To date no such meeting has been called. CT Page 10615
Hiram Peck was hired as the Oxford Town Planner by the Oxford Board of Selectmen in March 1987 and he continues to serve in that capacity. He operates under the policy direction of the Oxford Planning and Zoning Commission. Funds for the Oxford Town Planner's salary have been appropriated directly to the budget of the Oxford Planning and Zoning Commission. Convening of a town meeting requires the expenditure of Town of Oxford funds.
Mr. Quoka testified at trial that while he does not live in the Town of Oxford he is a taxpayer there on an assessment of not less than $1,000.00 and therefore would be qualified to vote at the meeting which he is petitioning. The court therefore concludes that he has standing to bring this lawsuit under provisions of General Statutes 7-6.
Both parties agree that the court's function in determining the right to mandamus must focus not just on the ministerial act required in the calling of a town meeting but also on whether or not the town meeting has the right to pass on the proposed ordinance which would be the subject of such a meeting.
The plaintiff claims that: 1) Charter 9-2 clearly grants the town meeting the right to control the selectmen's discretion; 2) that the court has jurisdiction to hear this writ; 3) that specific provisions of 9-2 limiting the selectmen's authority take precedence over more general provisions of 9-2 of the Charter relating to the selectmen's general powers over employees; 4) any apparent conflict between personnel regulations and an ordinance permitted by the Charter must result in such existing personnel regulations giving way; 5) the town planner position is not mandated by state law and therefore there is no independent general statutory requirement necessitating the maintenance of such a position; 6) the proposed ordinance does not conflict with 9-10
and 9-11 of the Charter because the charter provision indicating that the town planner maintains his position until a successor is appointed is merely a saving clause designed to continue employment of administrative officers holding office prior to Charter adoption but that this does not evidence a requirement to keep all positions held for all time; 7) Charter provision 7-14 permitting the Oxford Planning and Zoning Commission the right to hire employees it needs is not applicable because the Planning and Zoning Commission does not have the right to appoint the town planner because that appointment power is strictly delegated to the Board of Selectmen as set forth in 9-2 of the Charter; 8) the Selectmen do not have CT Page 10616 an unfettered discretion not to call town meetings by virtue of Charters 3-7 because such an important power would have been specifically listed in Charter 4-3 and 4-4 setting out the Selectmen's powers as to ordinances; 9) the town meeting has the right to vacate the town planner's office because prohibition against recall of officials is limited only to elected officials of municipalities not appointed officials like the town planner; 10) the plaintiffs are entitled to resort to the courts for legal relief rather than to the elective political process.
"An action of mandamus may be brought in his individual right by any person who claims that he is entitled to that remedy to enforce a private duty owned to him. . . ." Practice Book 541.
 It bears emphasis, however, that "[t]he writ of mandamus is an extraordinary remedy to be applied only under exceptional conditions, and is not to be extended beyond its well-established limits." Lahiff v. St. Joseph's Total Abstinence Society, 76 Conn. 648, 651, 57 A. 692
(1904); McAllister v. Nichols, 193 Conn. 168, 171, 474 A.2d 792 (1984). Furthermore, "[m]amdamus neither gives nor defines rights which one does not already have. It enforces, it commands, performance of a duty. It acts at the instance of one having a complete and immediate legal right; it cannot and it does not act upon a doubtful or a contested right. . . ." State ex rel. Comstock v. Hempstead, supra, 561; McAllister v. Nichols, supra, 171-72.
Hennessey v. Bridgeport, 213 Conn. 656, 659, 569 A.2d 1122 (1990).
 A party seeking a writ of mandamus must establish: "(1) that the party has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty; and (3) that the plaintiff has no adequate remedy of law." Vartuli v. Sotire, 192 Conn. 353, 365, 472 A.2d 336 (1984); Harlow v. Planning Zoning Commission, 194 Conn. 187, 196, 479 A.2d 808 (1984). Even satisfaction of this demanding test does not, however, automatically compel issuance of the requested writ of mandamus. Hackett v. New Britain, 2 Conn. App. 225, 229, 477 A.2d 148, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984). In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity. Sullivan v. Morgan, 155 Conn. 630, 635, CT Page 10617 236 A.2d 906 (1967). In the exercise of that discretion, special caution is warranted where the use of public funds is involved and a burden may be unlawfully placed on the taxpayers. . . ." Id.
Id., 659-60. The court may further exercise its discretion in declining to issue writ "to compel a technical compliance with the letter of the law . . . or to enforce a mere abstract right . . . or to accomplish a result which is not authorized by law." West Hartford Taxpayers Assn., Inc. v. Streeter, 190 Conn. 736, 740,462 A.2d 379 (1983) (citations omitted).
"Whether the plaintiff has a `clear legal right' to mandamus depends upon whether the proposal `clearly exceeds the legislative power of the electorate.'" Cheshire Taxpayers' Action Committee, Inc. v. Guilford, 193 Conn. 1, 7, 474 A.2d 97 (1984).
In the Cheshire case the court held that the trial court erred in issuing a writ of mandamus to compel the members of the Cheshire Town Council to submit an ordinance, proposed by initiative petition, to referendum. Id., 2. The court reasoned that the trial court should have first considered whether the proposed ordinance clearly exceeded the power of the electorate in that the ordinance would be void as contrary to the charter. Id., 4-5.
General Statutes 7-1 provides in pertinent part:
 Except as otherwise provided by law, there shall be held in each town, annually, a town meeting for the transaction of business proper to come before such meeting, which meeting shall be designated as the annual town meeting. Special town meetings may be convened when the selectmen deem it necessary, and they shall warn a special town meeting on application of twenty inhabitants qualified to vote in town meetings, such meeting to be held within twenty-one days after receiving such application.
General Statutes 7-1(a).
General Statutes 7-2 provides as follows:
 Notwithstanding the provisions of section 7-1, any town may adopt an ordinance, in the manner provided in section 7-157, requiring that a special town meeting be warned by CT Page 10618 the selectmen on application of at least fifty inhabitants qualified to vote at town meetings, such meeting to be held within twenty-one days after such application is received by the selectmen, provided nothing in this section shall be construed to affect any ordinance legally adopted prior to October 1, 1957.
General Statutes 7-2.
Pursuant to 7-2 the Town of Oxford adopted Charter 3-7 which provides as follows:
 The Board of Selectmen, upon receipt by the Town Clerk of a petition signed by fifty (50) persons qualified to vote at Town Meetings, shall call a Special Town Meeting within twenty-one (21) days. The matter or matters contained in the said petition, if proper subjects for legislative action at a Town Meeting as determined by the Board of Selectmen, shall be presented first on the call of the Special Town Meeting. The Board of Selectmen, in its discretion, may add other items to the call of the meetings.
In construing the requirements of General Statutes 7-1
(formerly 491 as amended by 157c) the courts have held that the statute reposes no discretion in selectmen when presented with a proper application. See Cumming v. Looney, 89 Conn. 557, 561,95 A. 19 (1915); Peck v. Booth, 42 Conn. 271, 274-75 (1875); Lyon v. Rice, 41 Conn. 245, 248-49 (1874); State ex rel. Feigl v. Raacke,32 Conn. Sup. 237, 244, 349 A.2d 150 (1975); Willis v. Sauer,19 Conn. Sup. 215, 218, 111 A.2d 36 (1954). A proper application must be for a legitimate, lawful, proper purpose, and not frivolous. See Lyon, supra; Feigl, supra.
Because Charter 3-7 is an offspring of General Statutes 7-1, the rules set out in our case law concerning 7-1 are equally applicable to Oxford Charter 3-7. The court must look to the purpose of the plaintiff's petition seeking a special town meeting.
The ordinance which the plaintiffs seek to enforce provides that, "The board of Selectmen for the Town of Oxford shall make vacant, vacate, and leave vacant the position of Town Planner." Section 9-2 of the Oxford Town Charter provides as follows:
In accordance with Section 9-1 of this Charter the Board CT Page 10619 of Selectmen shall hire qualified persons to the following officers to serve at the pleasure of the Selectmen, unless otherwise specified in the rules, regulations or ordinances of the Town of Oxford, and whose powers and duties shall be as prescribed in the General Statutes of the State of Connecticut and the Ordinances of the Town of Oxford:
(a) Civil Preparedness Coordinator
(b) Director of Public Assistance
(c) Building Official
(d) Tree Warden
(e) Director of Health
(f) Dog Warden
(g) Assessor
(h) Town Planner
Oxford Town Charter 9-2.
The provisions of 9-2(h) of the Charter stating that the Town Planner serves "at the pleasure of the selectmen unless otherwise specified in the . . . ordinances of the Town of Oxford" arguably permits the duration of an appointment to be changed to a definite term by ordinance. The phrase "unless otherwise specified" clearly modifies the charter phrase "serve at the pleasure of". Otherwise, the plaintiff's construction applying it to the appointments generally would permit the town meeting to change by ordinance the charter requirement that only "qualified" persons be appointed and would authorize ordinances to eliminate positions such as "Health Director" or "Building Official" or "Assessor", that the General Statutes mandate in all towns. The plaintiffs in arguing that there is no mandate of state law requiring a town planner for each municipality appear to be contending that since no general statute mandates the municipal office of the town planner and Charter 9-2
leaves the description of powers and duties to local ordinance, adoption of an ordinance perpetually vacating the office is permissible. Plaintiff's interpretation misses the point that 9-2
of the Charter mandates the office. CT Page 10620
Section 9-1 of the Oxford Town Charter provides in pertinent part:
 The Board of Selectmen shall have the power to hire, establish the working conditions of, promote, discipline, suspend and dismiss all persons employed by the Town, either full or part time, except as otherwise specified in this Charter.
Oxford Town Charter 9-1.
General Statutes 7-188 is the exclusive means available to a municipality to amend its charter. Sloane v. Waterbury, 150 Conn. 24,30-31, 183 A.2d 839 (1962). An ordinance cannot modify the provisions of a city charter and any ordinance purporting to do so is invalid. Rousseau v. Montensen, 13 Conn. Sup. 254, 256,536 A.2d 969 (Super.Ct., 1945). This is so because a charter of a municipality is akin to the constitution of a state. Just as a state statute cannot amend provisions of a state constitution so an ordinance of a municipality cannot amend the charter of that town. In other words, the charter like the constitution is a fundamental grant of authority of greater weight and dignity than the lesser ordinance or regulation adopted under its authority.
Section 7-188 of the statute provides in pertinent part:
 (a) Any municipality, in addition to such powers as it has under the provisions of the general statutes or any special act, shall have the power to (1) adopt and amend a charter which shall be its organic law and shall supersede any existing charter, including amendments thereto, and all special acts inconsistent with such charter or amendments, which charter or amended charter may include the provisions of any special act concerning the municipality but which shall not otherwise be inconsistent with the constitution or general statutes, provided nothing in this section shall be construed to provide that any special act relative to any municipality is repealed solely because such special act is not included in the charter or amended charter; (2) amend a home rule ordinance which has been adopted prior to October 1, 1982, which revised home rule ordinance shall not be inconsistent with the constitution or the general statutes; and (3) repeal any such home rule ordinance by CT Page 10621 adopting a charter, provided by the rights or benefits granted to any individual under any municipal retirement or pension system shall not be diminished or eliminated.
 (b) Any action pursuant to subsection (a) of this section shall be initiated by a resolution adopted by a two-thirds vote of the entire membership of the appointing authority of such municipality, or by petition filed with the clerk of such municipality for submission to the appointing authority and signed by not less than ten per cent of the electors of such municipality, as determined by its last-completed registry list; provided, in the case of a consolidated town and city having a town clerk and a city clerk, such petition shall be filed with the city clerk.
General Statutes 7-188(a) and (b).
Oxford Town Charter 10-6 incorporates the requirements of General Statutes 7-188(b) and provides the manner by which a proposed amendment is to be considered as follows:
 (a) The amendment of this Charter may be initiated either by a two-thirds (2/3) vote of the entire Board of Selectmen or by a petition signed by no less than ten (10%) per cent of the electors of the Town as determined by the last completed registry of the Town, and this initiation in either instance shall result in the appointment by the Board of Selectmen of a Charter Revision Commission, which shall consider any proposed amendments to the then existing Charter, present these at one or more public hearings, and submit its report for review to the Board of Selectmen, as prescribed in Charter 99 of the General Statutes, as amended. Such amendments shall not become effective until they have been approved by a majority of the Town electors voting thereon at a regular election, or by a majority equal to at least 15 (15%) per cent of the Town, as determined by the last completed registry of the Town, at a special election.
 (b) To the extent that the provisions of Chapter 99 of the General Statutes, as amended, as may now or hereafter apply to the manner of amending this Charter, shall no longer authorize any portion of the above procedure, then CT Page 10622 the applicable provision in this Charter shall be used instead.
Oxford Town Charter 10-6.
The purpose of the special town meeting is to enforce the town ordinance thereby ousting the Town Planner from his position and keeping the office vacant. This purpose is contrary to the express language of Charter 9-1 and 9-2(h) which creates and mandates the position and gives the selectmen the power to hire, suspend, and dismiss employees. In the court's opinion, the Home Rule Act which authorized adoption of the charter provision which mandates a town planner position, does not contemplate the permissible elimination of such a charter mandate by adoption of an ordinance the effect of which would be to keep the position the charter mandates forever vacant. The plaintiffs have not alleged that they have met the requirements for amending the charter. The proposed purpose for the special town meeting is improper insofar as it seeks to derogate through the ordinance making legislative power of the town meeting what has already been mandated by charter. The court will not issue the writ of mandamus because the plaintiffs have failed in their burden to establish a clear legal right to the relief sought.
Flynn, J.