[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
The plaintiffs have instituted this action claiming by way of relief: (1) a writ of mandamus ordering that the defendant- selectmen, forthwith set the time and place of a special referendum to rescind the action on the ballot question: "Shall the Town of Windham appropriate $24,500,000.00 for design and construction of a middle school to be located on Town-owned land on Quarry Street in Willimantic and authorize the issue of bonds and notes in the same amount to defray said appropriation?" of March 15, 1994; alternatively (2) a writ of mandamus ordering that the defendant- selectmen, forthwith call a special town meeting to reconsider the petition submitted to rescind the action on the ballot question: "Shall the Town of Windham appropriate $24,500,000.00 for design and construction of a middle school to be located on Town-owned land on Quarry Street CT Page 2233 in Willimantic and authorize the issue of bonds and notes in the same amount to defray said appropriation?" of March 15, 1994 and to reconsider and vote on said petition by the legislative body. The plaintiffs further claim (3) an injunction to stop the construction and continued expenditure of funds for the proposed Windham Middle school and (4) a declaratory judgment declaring the contract for architectural services regarding the school entered into between the Town of Windham and the architects to be invalid.
L. Welch-Rubin, in support of the writ.
T. Connell and R.S. Cody, contra.[1]
 Prologue
The parties entered into a stipulation of facts at the commencement of the hearing which may be stated as follows:
The plaintiff Windham Taxpayers Association is an non-profit corporation duly organized in accordance with the laws of the State of Connecticut. The individual plaintiff William Rood, president of the plaintiff Windham Taxpayers Association, resides within the Town of Windham and is a qualified voter and taxpayer in the Town of Windham. The individual plaintiff Steven Edelman, a member of the plaintiff Windham Taxpayers Association, resides within the Town of Windham and is a qualified voter and taxpayer in the Town of Windham. The defendant Walter Pawelkiewicz, Ph.D. was and is First Selectman of the Town of Windham, and a member of the defendant Board of Selectmen of the Town of Windham. The defendants George E. Barton, Hanna K. Clements, Joseph S. Marsalisi, John J. McGrath, Jr., Yolanda Negron, Charlotte S. Patros, C. Lawrence Schiller, Sam Shifrin, Sebastian Ternullo, and Thomas W. White were and are members of the defendant Board of Selectmen of the Town of Windham. The defendants Susan Collins, Rebecca Grillo, Paulann Lescoe, Barbara McGrath, Angela Mesick, Juan Montalvo, George Patros, and Lynne Weeks were members of the defendant Windham Middle School Building Committee. The Town of Windham has a home rule charter form of government.
On May 4, 1993 at its regular meeting, having first held a public forum to accept comment on establishing a Windham Middle School Building Committee, the Board of Selectmen of the Town of Windham by resolution voted to establish a Windham Middle School CT Page 2234 Committee. On June 1, 1993 at its regular meeting, the Board of Selectmen of the Town of Windham, by resolution, appointed said individual defendants to form the defendant Windham Middle School Building Committee at its July 1, 1993 regular meeting. On November 17, 1993, the Board of Finance approved a request to transfer $20,000.00 from the Contingency Fund to the Municipal Administrative Professional Services budget to pay for the pre-referendum professional architectural services. On December 16, 1993, the defendant Walter Pawelkiewicz, Ph.D., in his capacity as First Selectman for the Town of Windham, entered into a contract with the architectural firm of Russell, Gibson, Von Dohlen of Farmington, Connecticut (hereinafter referred to as "the architect" or "RGvD") to provide professional architectural services for the planning and construction of the proposed Windham middle school.
On March 15, 1994, the Town of Windham, by a four vote majority, passed a referendum appropriating $24,500,000.00 for design and construction of a middle school to be located on Town-owned land on Quarry Street in Willimantic and authorizing the issue of bonds and notes in the same amount to defray said appropriation. Thirteen days later, on March 28, 1994, seven hundred and two individual persons qualified to vote in the Town of Windham presented a petition pursuant to CGSA § 7-7
requesting that the Board of Selectmen of the Town of Windham call a special meeting to set the time and place of a special referendum to rescind the action on the ballot question: "Shall the Town of Windham appropriate $24,500,000.00 for design and construction of a middle school to be located on Town-owned land on Quarry Street in Willimantic and authorize the issue of bonds and notes in the same amount to defray said appropriation?" of March 15, 1994. Correna Bibeau, Assistant Town Clerk of the Town Windham properly confirmed that said forty five page petition was received from the plaintiff William Rood on March 28, 1994. On March 28, 1994, defendant First Selectman Walter Pawelkiewicz, Ph.D. requested that Assistant Town Clerk Barbara Pittman verify the signatures of the March 28, 1994 petition. On March 30, 1994, defendant First Selectman Walter Pawelkiewicz, Ph.D. was informed that seven hundred and two signatures had been verified.
Attorney Daniel K. Lamont, town counsel for the Town of Windham, issued an opinion letter to defendant First Selectman Walter Pawelkiewicz, Ph.D. on March 31, 1994, in which he stated in part that "the architect, by virtue of its contract and its CT Page 2235 post-referendum services performed in reliance thereon, has acquired a vested interest in the project and its fee for services provided. I believe, therefore, that the referendum question cannot now be reconsidered." At a regular meeting of the Board of Selectman of the Town of Windham held on April 5, 1994, its members voted to reject the March 28, 1994 referendum petition.
On April 29, 1994, thirty eight individual persons qualified to vote in the Town of Windham presented a petition pursuant to CGSA § 7-1 requesting that the Board of Selectmen of the Town of Windham call a special town meeting to reconsider the petition submitted to rescind the action on the ballot question: "Shall the Town of Windham appropriate $24,500,000.00 for design and construction of a middle school to be located on Town-owned land on Quarry Street in Willimantic and authorize the issue of bonds and notes in the same amount to defray said appropriation?" Ann M. Bushey, Town Clerk of the Town Windham properly confirmed that said three page petition was received from the plaintiff William Rood on April 29, 1994; she thereafter verified all thirty eight signatures for the defendant First Selectman Walter Pawelkiewicz, Ph.D. on May 2, 1994. Subsequently, the plaintiff Steven Edelman, a member of the plaintiff Windham Taxpayers Association, filed a complaint with the State Elections Enforcement Commission.
The following additional facts, while not stipulated, are found by the court and are relevant to a determination of the issues.
The plaintiff Windham Taxpayers Association is comprised of a group of persons qualified to vote who are taxpayers in the Town of Windham. Its stated purpose being to control municipal spending and promote the power of initiative, the plaintiff Windham Taxpayers Association, organized both the March 28, 1994 rescission referendum petition, and the April 29, 1994 special town meeting rescission petition. The plaintiff William Rood was a verified signatory of both the March 28th and April 29th petitions.
The March 28, 1994 rescission referendum petition was submitted on forms pre-approved by Ann Bushey, the Town Clerk, in accordance with her duties as defined by General Statutes § 7-9. The court finds from the evidence that the protocol followed by the Windham Taxpayers Association was appropriate, CT Page 2236 correct, and in accordance with the General Statutes and the Town Charter.
Upon the failure of the selectmen to schedule a town meeting or a referendum, the plaintiff Steven Edelman, a member of the plaintiff Windham Taxpayers Association, filed a complaint pursuant to General Statutes § 9-7b with the State Elections Enforcement Commission alleging that the defendants unlawfully failed to honor a petition for a special town meeting to reconsider a prior referendum vote authorizing an appropriation for a middle school. Because the Town of Windham has a home rule charter, a portion of which relates to the requirements of special town meetings, and in view of State v.Coventry, App. Court No. 2587, Judicial District of Tolland, on November 16, 1994, the State Elections Enforcement Commission declined jurisdiction over the complaint, which "Commission's action is to be considered a final decision for purposes of the legal doctrine requiring one to exhaust his administrative remedies."
The defendants consider the following factual background relevant to any consideration of the case and the court finds that the evidence produced at trial supports these findings:
The Town of Windham Board of Education began to study space requirements in Windham schools no later than 1988, when it established a subcommittee called the Space Committee. The Space Committee used resources offered to the Town of Windham by the State of Connecticut Department of Education ("DOE"), to evaluate the condition and quality of education in the Town's schools, and to recommend changes where needed. The DOE completed its report on June 28, 1989. The Space Committee submitted its report in May of 1990. The report indicates that the DOE and the Space Committee determined that the Town needed more space for its students. In considering changes, the DOE considered several alternatives, among which was the erection of a new middle school where children in grades 5 through 8 would attend.
The report recommended a new middle school for a variety of reasons, including education quality, environment, safety and recreation. Shortly afterward, Town officials, including the Board of Selectmen, began to implement the recommendation. On June 27, 1990, the selectmen established a Middle School Building Committee. Meanwhile, the superintendent began the CT Page 2237 Town's application for state funding, by filing an application called the ED 040 with the DOE on June 28, 1990. The DOE sent the approved application to the Connecticut legislature, which voted to advance the project with 79.29% funding.[2] During the trial the plaintiffs' witness, Daniel Lein, a former first selectman for the Town of Windham, testified that the rate of 79.29% is a high reimbursement rate which the Towns can no longer acquire.
Between those days in 1990 and events in early 1993 regarding the formation of the Middle School Building Committee, there were no pertinent local events, but the Connecticut legislature voted each year to continue the Town's reimbursement rate. Upon the recommendation of the Middle School Building Committee and armed with the preliminary plans of the architect, the Board of Selectmen targeted a March 15, 1994 town meeting on the question of whether or not to appropriate $24.5 million to construct the new school. After it received a petition requesting that the town meeting question be put to referendum, the Board called a referendum. The referendum was properly noticed according to law; and polls were open during the day of March 15, 1994. Nearly 4000 persons voted, and the question passed by a four-vote margin. A recanvass affirmed the four-vote margin. Neither the validity of the referendum vote, nor the process in holding the referendum, is challenged by the Plaintiffs. Thirteen days after the referendum had occurred, the plaintiffs began their activity to rescind the vote.
From this factual background the parties raise issues of standing, justifiability, discretion, proper filing and appropriateness of the initiative.
 I. Standing
The defendants spend considerable effort attempting to prove that the the Windham Taxpayers Association and the two individual plaintiffs lack standing. The plaintiffs argument in favor of standing is convincingly more persuasive. The court concludes that all of the plaintiffs have standing.
"`Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or CT Page 2238 representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy . . . . Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented . . . .' (Citations omitted; internal quotation marks omitted.) Unisys Corp. v. Department of Labor,220 Conn. 689, 693 (1991)." Sadoloski v. Manchester, 228 Conn. 79,84 (1993). Because standing implicates subject matter jurisdiction, which the parties cannot confer on the court by either waiver or consent, it is necessary to examine whether each particular plaintiff separately has standing.
While this state's jurisprudence has long recognized the capacity of taxpayers of towns and cities to challenge the legality of the actions taken by their municipal officers; AlarmApplications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541,548 (1980); Bassett v. Desmond, 140 Conn. 426, 430 (1953);Sauter v. Mahan, 95 Conn. 311, 314 (1920); Mooney v. Clark,69 Conn. 241, 244 (1897); New London v. Brainard, 22 Conn. 553, 557
(1853); the court recognizes that the plaintiffs' action is more than a taxpayer challenge to enforce the Town of Windham's duty to expend or allocate tax monies in a manner consistent with the law. The plaintiffs claim that it is also a challenge centered on the power of the people to legislate directly through the process of initiative and referendum.
The right of the people to petition is not only a fundamental right under both the federal and state constitutions, the first amendment and Article First, § 14, respectively, it is further guaranteed by state statutes: General Statutes § 7-1, 7-2, 7-6, -7-7. Because William Rood meets the statutory requirements of General Statutes § 7-6, in that he is qualified to vote at both the referendum and special town meeting which he petitioned, he has legal standing to pursue this action. Quoka v. Drapko, 8 CSCR 37 (Hodgson, J.) (November 25, 1992) (taxpayer had standing to bring mandamus action because he was qualified to vote under the provisions of General Statutes § 7-6 at the special town meeting that he was petitioning). See also, Clark v. Gibbs, 184 Conn. 410 (1981) (court did not attack standing of plaintiffs, who as residents, CT Page 2239 taxpayers and qualified voters, had right to seek mandamus action on referendum petition).
While Steven Edelman did not sign either petition, he nonetheless similarly has standing under General Statutes § 7-6
because, as he is a taxpayer and registered voter in the Town of Windham, he was qualified to vote at both the referendum and special town meeting that was petitioned by the plaintiff William Rood. The failure of the board to conduct a town meeting pursuant to the petition constitutes aggrievement because, had the defendant Board of Selectmen honored either petition, the plaintiff Steven Edelman would have had the legal right to vote at such referendum or special town meeting. This right to vote constitutes the specific legal interest sufficient to establish standing for the plaintiff Steven Edelman.
The individual plaintiffs additionally meet the two part test established for taxpayer challenges to municipal expenditures: (1) they are taxpayers of the municipality; and (2) they have alleged that the improper municipal conduct caused them to suffer "some pecuniary or other great injury."Sadlowski v. Manchester, 228 Conn. 79, 83; Alarm Application Co.v. Simsbury Volunteer Fire Co., 179 Conn. 541, 549. It is not controverted that the individual plaintiffs are taxpayers in the Town of Windham (Stipulation); it is also uncontroverted that the bond issue to pay for the construction of the new middle school would increase taxes in the Town of Windham. An increase in the taxes paid by the individual plaintiffs provides them with the requisite interest to maintain this action. As the state Supreme Court reaffirmed in Sadlowski v. Manchester,
standing is conferred when the plaintiff has proven that the project "has directly or indirectly increased her taxes." Id.,228 Conn. at 83. Similarly, "as long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great . . . [and] need not be primarily economic." Board of Parsons v. Freedom of Information Commission210 Conn. 646, 649 (1989). See also, Atwood v. Regional SchoolDistrict No. 15, 169 Conn. 613, 617 (1975) (because proposed bond issue would increase taxes, trial court correctly ruled that plaintiffs had standing to challenge legality of spending).
Although the plaintiff Windham Taxpayers Association neither votes nor pays taxes in the Town of Windham, it nonetheless has standing in its representative capacity as a nonprofit corporation comprised solely of residents and CT Page 2240 taxpayers of the Town of Windham, whose organizational purpose is to promote fiscal conservatism and the power of initiative. Having organized the two petition campaigns at issue herein, and having many members which signed the petitions, the plaintiff Windham Taxpayers Association had a legally cognizable interest that the referendum or special town meeting be held. Moreover, an association, such as the plaintiff Windham Taxpayers Association, has standing to sue on behalf of its members when, such as in the instant matter, it meets three conditions: (1) its members would "otherwise have standing to sue in their own right;" (2) the interests the association seeks to protect are "germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v.Washington Apple Advertising Comm., 432 U.S. 333, 343 (1977);International Union, United Automobile, Aerospace, andAgricultural Implement Workers of America v. Brock, 477 U.S. 274
(1986); This test for representational standing was adopted in Connecticut in two cases; Connecticut Assn. of Health CareFacilities, Inc. v. Worrell, 199 Conn. 609, (1986) and TimberTrails Corporation v. Planning and Zoning Commission 222 Conn. 380,393 (1992). Because the plaintiff Windham Taxpayers Association was allegedly aggrieved by the failure of the defendant Board of Selectmen to honor the petitions at issue, it has standing to pursue the relief claimed. The Town of Windham's position that the plaintiffs William Rood, Steven Edelman and the Windham Taxpayers Association lack legal standing is without merit
 II. Justiciability
The defendants contend that the mandamus sought is not capable of being adjudicated on two related grounds: (1) that it is a political question that implicates the separation of powers; and (2) that, because the Home Rule Act, General Statutes § 7-187 et seq, and the Charter of the Town of Windham vest the decision whether or not to call a referendum or special town meeting wholly in the discretion of the defendant Board of Selectmen, the judiciary cannot compel an act of the legislative body. The court disagrees.
A.
CT Page 2241
Justiciability, like standing, implicates the subject matter jurisdiction of the court. The applicability of the political question doctrine[3] as it relates to justiciability, is easily resolved. As the state Supreme Court recently reaffirmed, "the characteristic of such issues as political is a convenient shorthand for declaring that some other branch of government has constitutional authority over the subject matter superior to that of the courts.' Pellegrino v. O'Neill,
[193 Conn. 670, 680, cert. denied, 469 U.S. 875 (1984)]. The fundamental characteristic of a political question, therefore, is that its' adjudication would place the court in conflict with a coequal branch of government in violation of the primary authority of that coordinate branch. Baker v. Carr, [369 U.S. 186,217 (1984)]." Nielsen v. Kezer, 232 Conn. 65, 74 (1995). First, a municipal government, unlike the state legislature, is, not a coequal branch of government with the state judiciary. In addition, there is a long history in this state of its' judiciary exercising authority to decide issues, such as the instant controversy, involving mandamus actions compelling municipalities to hold referenda or town meetings in response to petitions. Lyon v. Rice, 41 Conn. 245 (1874); Reed v. Risley,151 Conn. 372 (1964); West Hartford Taxpayers Association, Inc.v. Streeter, 190 Conn. 736 (1983);[4] Cheshire Taxpayers ActionCommittee. Inc. v. Guilford, 193 Conn. 1 (1984); Willisv. Sauer, 19 Conn. Sup. 215, 216-217 (1954). Such body of caselaw clearly establishes that, while the question as to whether or not there should be a new middle school in the Town of Windham necessarily implicates the political process[5], it does not present a political question in the legal sense sufficient to deprive this court of subject matter jurisdiction.
 B.
The defendants next contend that the Town Charter, read in conjunction with the Home Rule Act, as interpreted by the present Board of Selectmen, renders the people's right of initiative through petition, as provided in General Statutes § 7-1, 7-2 and 7-7 to be greatly reduced except in four specified situations recited in XI-3 of the Charter:
 Town meeting approval shall be required for the following:
(a) Consideration of the annual budget; CT Page 2242
 (b) Approval of any additional appropriation in excess of $20,000 for any purpose;
 (c) Authorizing the issuance of bonds or notes or other borrowing;
 (d) Any sale or purchase of real estate of the Town used or reserved for Town or Service District purposes. The Board of Selectmen may submit any other matter if desires to town meeting for its consideration. The town meeting shall not act upon any appropriation in excess of $20,000 except upon the recommendation of the Board of Finance, nor shall it increase the amount of any appropriation above the amount recommended by the Board of Finance.
Without reciting the rather complex and very extended argument of the defense, it is sufficient to say that the entire argument rests on an interpretation that the petition to rescind in this case is not required to be submitted to the voters by the Board of Selectmen except in the four situations set forth above. The defendants are correct that the Town Charter, adopted under the Home Rule Act, General Statutes § 7-188, constitutes the "organic law of the municipality . . . . (Citations omitted). The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. (Citations omitted). West Hartford TaxpayersAssociation. Inc. v. Streeter, 190 Conn. at 742. "`There is attached to every ordinance, charter, or resolution adopted by or affecting a municipality [however,] the implied condition that these must yield to the predominant power of the state when that power has been exercised. See 6 McQuillin [Municipal Corporations (3d Ed. Rev.)] § 21.32. This is in keeping with our law that a municipality, as a creature of the state "can exercise only such powers as are expressly granted it or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." NewHaven Water Co. v. New Haven, 152 Conn. 563, 566 (1965); seeBaker v. Norwalk, 152 Conn. 312, 314 (1965); Bredice v. Norwalk,152 Conn. 287, 292 (1964); Ingham v. Brooks, 95 Conn. 317, 328-29
(1920).' Bencivenga v. Milford, 183 Conn. 168, 173 (1981)."Dwyer v. Farrell, 193 Conn. 7, 12 (1984).[6] While "[i]t is permissible [for a municipality] to regulate in a manner truly CT Page 2243 consistent with state law; it is quite another matter, however, to prohibit that which state law permits." Id., 193 Conn. at 15
n. 8. That state law permits the power of initiative, "a form of direct legislative action by the people," West HartfordTaxpayers Association. Inc. v. Streeter, 190 Conn. at 739, cannot be in doubt. "This fundamental reservation of power by the people should be highly respected." Cheshire Taxpayers' ActionCommittee Inc. v. Guilford, 193 Conn. at 6. General Statutes 7-1,7-2, 7-6, and 7-7 make it plain that the state of Connecticut affords statutory protection to the federal and state constitutional rights to petition. "The duty of calling [a special town meeting,] legally applied for by twenty qualified voters, [and the duty of calling a referendum, legally applied for by more than two hundred qualified voters] was a governmental duty imposed upon these selectmen by statute. The holding of such elections as are provided by law is as essential under our theory of government as is the preservation of order or the administration of justice. Each is imperative, because a vital part of the machinery of government." Cummings v.Looney, 89 Conn. 557, 562 (1915).
Because the defendants' interpretation of the Town Charter, as read in conjunction with the Home Rule Act, removes the right of initiative by petition in virtually all situations except four, a right created by state statute, that the state has expressly bestowed on the people, and the state and federal constitutions guarantee, such interpretation cannot legally stand. By definition, the defendants' contention that, "unless the subject matter of the petition falls within the mandatory subjects of Article XI-3 of the Windham Charter, it is up to the selectmen's [unbridled] discretion whether to warn a Special Town meeting" irreconcilably conflicts with General Statutes §§ 7-1, 7-2, 7-6 and 7-7, thus exceeding the powers allotted to a municipality. See, Dwyer v. Farrell,193 Conn. at 14;Shelton v. City of Shelton, 111 Conn. 433, 447 (1930). General Statutes §§ 7-1 and 7-7 mandate that a special town meeting and referendum respectively shall be held upon a proper petition. The Charter of the Town of Windham is not in conflict with the statutes; the 21581 interpretation of the charter presently being advanced by the defendants, is in conflict with the state statutes. Accord, § V-7 "Power of Initiative" and § V-6 "Repeal of Ordinances," both of which expressly reserve for the people of the Town of Windham the right to petition and direct that, if the Board of Selectmen fails to act favorably on the requested petition, it CT Page 2244shall schedule a referendum . . . "(emphasis added).
The plaintiffs' contention that the Town Charter does not vitiate the people's right to petition as set forth in General Statutes §§ 7-1, 7-2, 7-6 and 7-7 finds further support in the pattern and practice of previous Boards of Selectmen of the Town of Windham. Since the Town Charter was adopted when confronted with either a petition for a special town meeting or a petition for a referendum, both Norman French, First Selectman for the Town of Windham from 1987 to 1989 and Daniel Lein, First Selectmen for the Town of Windham from 1989 to 1991 testified that, when presented with a proper petition, the Board of Selectmen was mandated by state law to hold such special town meeting or referendum and could exercise no discretion on such matters.
Mr. Lein testified that if [a petition] met the legal requirements, then the Board of Selectmen "were compelled by law. . to pass it along to the people." "This prior interpretation, placed upon the terms of the charter by the town for a lengthy period of time, is to be accorded considerable deference. Corey v. Avoco-Lycoming Division, 163 Conn. 309, 326
(1972) Loiselle, J., concurring), cert. denied, 409 U.S. 1116
(1973)" Burwell v. Board of Education, 178 Conn. 509, 518
(1979).
The court concludes that the board of selectmen have a duty to hold special town meetings in accordance with General Statutes §§ 7-1 and 7-7 and in accordance with the Charter provision V-7 when petitioned for any proper lawful purposeWillis, State's Attorney v. Sauer, supra, 217 and with carefully circumscribed exceptions, that duty is mandatory.
 III. Mandamus
The plaintiffs concede that mandamus is an extraordinary remedy; Gelinas v. West Hartford, 225 Conn. 575, 586 (1993);Monroe v. Middlebury Conservation Commission, 187 Conn. 476, 480
(1982); Lahiff v. St. Joseph's Total Abstinence and BenevolentSociety, 76 Conn. 648, 651 (1904) ; granted in the sound discretion of the court and only under compelling circumstances.Monroe v. Middlebury Conservation Commission, 187 Conn. at 480; CT Page 2245Simmons v. Budd, 165 Conn. 507, 515 (1973), cert. denied,416 U.S. 940 (1974). Such remedy, however, is an appropriate one where (1) the duty to be performed is ministerial; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other sufficient remedy. Golab v.New Britain, 205 Conn. 17, 20 (1987); Vartuli v. Sotire,192 Conn. 353, 365 (1984).
"Even satisfaction of this demanding test does not, however, automatically compel issuance of the requested writ of mandamus. Hackett v. New Britain, 2 Conn. App. 225, 229,477 A.2d 148, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984). In deciding the propriety of a Writ of mandamus, the trial court exercises discretion rooted in the principles of equity.Sullivan v. Morgan, 155 Conn. 630, 635, 236 A.2d 906 (1967). In the exercise of that discretion, special caution is warranted "where the use of public funds is involved and a burden may be unlawfully placed on the taxpayers . . . ." Hennessey v.Bridgeport, 213 Conn. 656, 659 (1990).
Because the plaintiffs believe that they meet all three of the necessary criteria, they request that this court exercise its discretion in favor of issuing the writ.
The plaintiffs maintain that General Statutes § 7-7 and 7-1[7]
"repose no discretion in the selectmen when a proper application for petition is presented to them and that it is then the duty of the selectmen, enforceable by mandamus, to call the meeting." Willis v. Sauer, supra, 216-217 Lyon v. Rice,41 Conn. 245 (1874). It should be noted that Willis goes further: "However, it was recognized in that case [Lyon v. Rice] at page 248, that the meeting must be requested "for a legitimate and proper purpose." And, at page 251, Phelps, J., in a dissenting opinion, agrees with the majority of the court that "no discretion is vested in the selectmen to deny the petition unless the object of it is unlawful, or manifestly frivolous, or other wise improper." And further along, "Thus the court again recognized that the statutory right of the electors to demand a special meeting is subject to the implied condition that the purpose of the meeting shall be a lawful purpose." Id. at 217.
Predicated upon the uncommon agreement between counsel for the plaintiff and counsel for the defendant (in their respective briefs), that Willis v. Sauer appropriately states the law, CT Page 2246 counsel for the plaintiff represents "The question for this court is thus, not whether the defendant Board of Selectmen had unlimited discretion to call a referendum or special town meeting in response to the instant petitions, as the defendants would have the court frame the issue, but rather whether these petitions were for a proper purpose.[8]" (Plaintiffs memorandum of law, page 36.) The court agrees that this is the appropriate inquiry.
This concept of `proper purpose' has been more recently framed in a slightly different way as it relates to the right of the initiative: "`Although courts should not examine direct action legislation so critically as to frustrate the exercise of the franchise, nevertheless, if the proposed legislation clearly exceeds the legislative power of the electorate it is entirely appropriate for the court, in a proper case, to withhold the judicial command.' West Hartford Taxpayers Association v.Streeter, 190 Conn. at 740." Cheshire Taxpayers ActionCommittee, Inc. v. Guilford, 193 Conn. at 7.
The plaintiffs in their complaint and in their brief, place great reliance upon the case of Terrett v. Town of Sharon34 Conn. 105 (1867) at page 108 where it is stated: "The power of the town to rescind cannot be doubted." The appropriate and much relied upon quote goes on ". . and the recision, it is substantially conceded in the argument, must deprive the selectmen and agents of the town of all right and power to pay the claims, unless the vote gave the claimants a vested interest. . ." (emphasis added). It was conceded that there were no claimants between the time of the original vote and the vote to rescind nor anyone who "otherwise acted upon the faith of thevote."
Consistent with Terrett: "The power to adopt a resolution carries with it the power to rescind unless irrevocable rights and obligations have been created by the original resolution.Madison v. Kimberly, 118 Conn. 6, 11 (1934)." Central Veterans'Association v. Stamford, 140 Conn. 451, 454 (1953). It was upon this basis, that irrevocable rights or contractual rights had vested, that the Town Counsel advised the First Selectman against submiting [submitting] the petition, as written, to a vote.
In June, 1899 and in October, 1901, the City of Bridgeport acting on resolution of the common council, obtained approval from the General Assembly to empower the City to issue bonds for CT Page 2247 the erection of a new city hall. In November of 1901 a new common council was elected and it passed certain resolutions to rescind the action of the prior common council so that none of the avails of the bond issue be further expended "except for payment of legal obligations of the city arising from contracts already made and entered into by the committee" and that all action inconsistent with this "is hereby repealed and rescinded." Staples v. Bridgeport et al. 75 Conn. 509, 512
(1903).
The Supreme Court in Staples ruled that a municipality "may rescind that vote at least before it has been substantially acted upon, subject only to the liability of paying . . . whateverdebts and obligations the committee may have lawfully contractedor incurred previous to such recission [recision]." Id. at 515. The resolution in support of the recission [recision], clearly and unequivocally provided for payment of legal obligations arising out of the prior vote.
The petition filed in the instant case does not make any provision for the protection of the town or the creditors who, in good faith, relied "upon the faith of the vote". While the plaintiffs might argue that very little time had elapsed or that very little money had been spent, the various contractors and town officials were not required, nor permitted, to `stop all engines' merely because the petition had been filed. Under both the charter and the statutes, meetings would have to be warned and scheduled, all in the future, during which time more work was performed and more funds expended. There was no provision in the initiative proposed by the Windham Taxpayers Association to provide for payment of liabilities which may have been incurred "upon the faith of the vote." If the initiative had been successfully advanced and the prior vote rescinded, the Town, the voters, the creditors and the elected officials would have been left with unresolved and unfunded legal obligations.
Accordingly, based upon the facts of this case where a referendum has occurred allowing for the expenditure of public funds, and where an attempt is made to subsequently rescind the prior vote, this court holds that it is proper for the selectmen to reject a proposed initiative that fails to protect "persons who have acted upon the faith of the [prior] vote" and fails to provide "for payment of legal obligations of the [municipality] arising from contracts already made and entered into by the [municipality] prior to such recision". CT Page 2248
This analysis not only protects those who contract in good faith with the municipality following a referendum vote, but also protects the municipality itself and its' officials from claims of damages or responsibility for expenditures already incurred. The plaintiffs' proposed initiative in this case failed to make such provisions for payment of legally incurred expenditures and accordingly, was not a proper petition.
Since the selectmen have the very limited implied power to reject a petition which "could not be lawfully considered or acted upon at a special meeting" Willis v. Sauer, supra at 218; or "exceeds the legislative power of the electorate" WestHartford Taxpayers Association v. Streeter, 190 Conn. at 740."Cheshire Taxpayers Action Committee, Inc. v. Guilford,193 Conn. at 7 or ". . . is unlawful, or manifestly frivolous, or other wise improper" Lyon v. Rice, supra, 251; the court concludes that the selectmen acted within their implied power to reject the initiative proposed in this case.
The implied power to reject an improper petition is, however, not nearly as expansive as the discretion urged by the Town of Windham in its home rule/charter argument. The decision not to advance a petition appears to be so narrow that it would be unwise of the Board of Selectmen to deny a petition without extremely careful deliberation and consideration after consultation with legal counsel.
The plaintiffs are not entitled to a writ of mandamus on the presently proposed initiative.
The plaintiffs alternatively sought an injunction. Since in this case mandamus is available as an appropriate remedy, upon the submission of a proper petition, and is "generally viewed as a remedy at law"; Stolberg v. Caldwell, 175 Conn. 586,613 (1978), an injunction would ordinarily not lie. Monroe v.Middlebury Conservation Commission, 187 Conn. at 480. This does not mean however, that upon the failure of the Board to act upon a proper petition "the legal writ of mandamus or the equitable remedy of injunction or . . a combination of both, In reAlexander, 243 A.2d 901, 903 (D.C.App. 1968)" Id. at 481, may not be available to the plaintiffs.
With respect to the plaintiffs claim for declaratory relief to declare the contract between the Town and the architect to be CT Page 2249 invalid, the request was withdrawn at the conclusion of the trial since the architects, who would clearly be necessary parties, had not been made parties defendant.
Judgment may enter accordingly.
Foley, J.